UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>   Plaintiff,<br><br>          v.<br><br>PORTLAND MAINE AREA LOCAL NO. 458 AMERICAN POSTAL WORKERS UNION,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:14-cv-00320-JDL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON PLAINTIFF'S MOTION TO ENFORCE TERMS OF PARTIES' STIPULATION OF SETTLEMENT AND DISMISSAL**

The Secretary of the United States Department of Labor (the "Secretary") has moved to enforce the terms of a settlement agreement he entered into with the Portland Maine Area Local No. 458 American Postal Workers' Union (the "Union"). ECF No. 30. After careful consideration, I grant the Secretary's motion.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

In August 2014, the Secretary sued the Union, alleging that certain labor law violations occurred during the Union's March 13, 2014 election of officers. *See* ECF No. 1 at 1. The parties settled this claim on April 16, 2015. *See* ECF No. 26. Broadly, the parties agreed that the Secretary's complaint would be dismissed and that the Union would conduct a new election for the offices of General President and General Vice President. *Id*. at 2. In addition, the parties agreed that the court would retain jurisdiction over the action for the sole purpose of resolving any disputes with respect

to the enforcement of the settlement.  ECF No. 27 at 2; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

After the settlement, one of the two candidates who had run for General President in the March 2014 election decided not to seek election a second time.  ECF No. 30 at 2-3.  The Union believes that the terms of the settlement do not require it to hold new nominations for General President in these circumstances.  ECF No. 31 at 4.  Rather, the Union argues that the settlement agreement either does not require a new election to be held for the office of General President, or that it allows the sole remaining candidate for General President – the incumbent – to run unopposed.  *Id*. at 5.  The Secretary disagrees, contending that the settlement agreement now mandates an open nomination process.  ECF No. 30 at 4.

The portion of the settlement agreement at issue is paragraph four, which reads as follows:

> The Parties . . . hereby stipulate and agree through their undersigned counsel that the Defendant shall conduct a new election and, *as necessary, new nominations limited to the prior nominees*, for the offices of General President and General Vice President no later than four months from the date this stipulation of settlement and dismissal is so-ordered by the Court.  The new election shall be conducted by the Defendant under the supervision of the Secretary.

ECF No. 26 at 2 (emphasis added).

After learning that the Union intended to hold new elections without opening the nominations for General President, the Secretary filed a motion to enforce the settlement agreement by requiring "that new nominations be held for the office of

2

General President[.]" ECF No. 30 at 4. A hearing was held on this motion on July 28. *See* ECF No. 34.

## II. DISCUSSION

As a threshold matter, the parties' dispute raises the question of whether paragraph four of the settlement agreement is ambiguous. "[L]anguage is ambiguous if the terms are inconsistent on their face, or if the terms allow reasonable but differing interpretations of their meaning." *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir. 1993). While unambiguous language is interpreted according to its "plain and natural meaning," ambiguous terms are clarified by inquiring into the intent of the parties. *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). This inquiry involves consideration of the surrounding circumstances, including undisputed extrinsic evidence. *Rodriguez-Abreu*, 986 F.2d at 586.

Each party offers its own interpretation of paragraph four. The Union contends primarily that "the language of the Settlement Agreement, and in particular Paragraph 4 is clear: Elections are only 'if necessary', and would only include 'new nominations limited to the prior nominees.'" ECF No. 31 at 4.[1] In contrast, the Secretary asserts that had the same two nominees for General President who ran in the earlier election agreed to run again in the supervised election, new nominations would not be "necessary" for purposes of paragraph four. ECF No. 30 at 3. But because one of the nominees has withdrawn, the Secretary contends that "it is now

---

[1] This reference to "if necessary" is obviously intended to refer to the settlement agreement's employment of the term "as necessary."

'necessary' for there to be 'new nominations limited to the prior nominee' for General President." *Id*.

Although the Secretary and Union offer vastly different interpretations, neither argues that paragraph four is ambiguous. *See* ECF No. 31 at 2; ECF No. 32 at 5. Nor is an ambiguity necessarily "created merely because the litigants disagree about the meaning of a contract." *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004). An unartfully drafted provision in a settlement agreement may still be unambiguous if it is reasonably susceptible to one interpretation and not two or more interpretations. For reasons I will explain, I conclude that the Secretary's construction is reasonable, and that the constructions advanced by the Union are not.

The Secretary's construction is in keeping with paragraph four's use of the term "as necessary" to qualify "new nominations limited to the prior nominees." This construction honors the requirement, unconditionally expressed earlier in the sentence, that the Union "*shall* conduct a new election[.]" ECF No. 26 at 2 (emphasis added.). The only requirement that paragraph four qualifies "as necessary" is the potential need for "new nominations" which are "limited to the prior nominees." *Id*. Although less than clear, this provision can reasonably be understood to mean that if both of the existing nominees from the previous election will participate in the supervised election, new nominations are not necessary. And further, that if one or both of the nominees from the prior election will not participate in the supervised election, new nominations are necessary.

4

For the same reasons, the alternate constructions of paragraph four offered by the Union are not supported by the paragraph's language. First, the Union contends that "if necessary" qualifies the necessity of a "new election" and, if an election is necessary, new nominations would be limited to the prior nominees. ECF No. 31 at 4. This construction is unreasonable because a new election is unconditionally required by paragraph four's directive that, "the [Union] *shall* conduct a new election[.]" *Id.* (emphasis added). "Shall" is unconditional. Further, the term "as necessary" qualifies "new nominations limited to the prior nominees." *Id.* "[A]s necessary" cannot be treated, in direct defiance of the sentence's syntax, as qualifying "a new election" because "a new election" precedes "as necessary" and is separated from it by the word "and." Accordingly, the Union's first proposed construction of paragraph four does not align with the paragraph's language and syntax.

The other possible construction suggested by the Union is that under paragraph four, "it stands to reason that the General Vice President nominees would seek nomination and run, and that the one General President nominee would seek the nomination and run unopposed." ECF No. 31 at 5. Under this construction, new nominations would only be "necessary" – thereby triggering paragraph four's requirements – if both of the existing nominees withdrew from the supervised election. The language of paragraph four does not, however, suggest this limitation. There is, therefore, no reasonable basis upon which to limit the necessity of new nominations to the circumstance where both of the existing nominees withdraw from consideration.

5

## III. CONCLUSION

I conclude that the settlement agreement is unambiguous, and that its plain meaning requires the Union to permit new nominations for General President under the circumstances now presented. The Secretary's motion (ECF No. 30) is hereby **GRANTED**. It is **ORDERED** that the Union shall permit new nominations for the office of General President, and the supervised election shall be completed and certified by the Secretary within four (4) months of entry of this order.

SO ORDERED.

/s/ Jon D. Levy
**U.S. District Judge**

**Dated this 20th day of August, 2015.**