IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor United States Department of Labor,<br><br>Plaintiff,<br><br>-v-<br><br>PORTLAND, MAINE AREA LOCAL NO. 458, AMERICAN POSTAL WORKERS UNION<br><br>Defendant. | Civil Action No. 2:14-cv-00320-JDL<br><br>CERTIFICATION OF SUPERVISED ELECTION |

## DECLARATION OF SHARON HANLEY

I, Sharon Hanley, am the Chief of the Division of Enforcement, Office of Labor-Management Standards (OLMS), United States Department of Labor (Department). On November 30, 2015, OLMS supervised an election of officers of the Portland, Maine Area Local No. 458, American Postal Workers Union (APWU National Union). The supervised election was held, pursuant to a Stipulation of Settlement and Dismissal of Plaintiff's Claims Pursuant to FED. R. CIV. P. 41(a)(1(A)(ii), filed with the Court on April 16, 2015.

By email on November 5, 2015 and by mail on November 20, 2015, Donnie Clark, a member of Local 458, filed pre-election protests with the OLMS Election Supervisor, Rose Cheyette, alleging that Title IV of the Labor-Management Reporting and Disclosure Act of 1959 ("Act" or "LMRDA"), 29 U.S.C. §§ 481- 484, was violated during the conduct of the election. The Department investigated the allegation. As a result of this investigation, as presented

herein, I find that there was no violation of the Act. Following is an explanation of the Department's finding.

The November 5 and November 20 protests challenged the candidacy eligibility of Peter Brogan. Brogan submitted a letter to OLMS Election Supervisor Cheyette dated October 27, 2015, withdrawing himself as a candidate for General President. The protest of his eligibility is moot.

The November 5 and November 20 protests also challenged the candidate eligibility of John Riley, a losing candidate for the office of General Vice President. The protests assert that Riley was ineligible to run in both the 2014 election conducted by the local and in the November 2015 remedial election supervised by the Department of Labor, as he was not a member of the local at the time of the elections.

The argument against Riley's having been a member of the union at the time of the original, 2014 election is that he "self-terminated" his Local 458 membership by failing to pay full dues as of February 9, 2013. In support of that argument, William Gilchrest, Local 458's Treasurer, provided a signed statement to the Department alleging that Local 458 never received or deposited any funds related to any payment of dues from John Riley, with the exception of one check Riley hand-delivered to Gilchrest in January of 2014.

The Department found that Gilchrest's statement to be inconsistent with previous documents that Local 458 provided to the Department during the agency's investigation of the 2014 election. Communications between Riley and union officials -- emails dated March 13, 2013, March 21, 2013 and an email dated December 20, 2013 from Riley to union officials as well as an April 3, 2013 letter to Riley from the local President-- demonstrate that Riley tendered union dues payments to the local, but the local did not accept the dues. In the

December 20, 2013 email from John Riley to William Gilchrest, Riley confirmed that Local 458 returned a check that Riley had forwarded to the union for payment of his union dues and that Gilchrist had indicated to Riley that the check was being returned to Riley because of the local's past practice of not charging full local dues to retired members. Riley attempted to pay his local dues to retain member in good standing status in Local 458, but Local 458 refused to accept the dues. Moreover, contrary to the union's argument that Riley was not a member and ineligible to run for office in the 2014 election, the Department's investigation of the 2014 election showed that Local 458 in fact found Riley a member who was eligible to run for office and placed his name on the ballot for the 2014 election. On these facts, the Department concluded that at the time of the 2014 election Riley was a member of Local 458, was in good standing, and eligible to run for office.

When the questions of Riley's 2014 membership and eligibility status were again raised in the context of the 2015 supervised election, OLMS reviewed additional information and records that Riley and the APWU National Union provided to the Department. OLMS attempted to secure records from Local 458's Treasurer, William Gilchrest, but Gilchrist refused to answer OLMS' question or produce any document due to a private lawsuit Riley filed against Local 458 and its former General President, Timothy Doughty, currently pending in the United States District Court for the District of Maine.[1]

---

[1] *See Riley v. Portland, Maine Area Local No. 458, American Postal Workers Union and Timothy Doughty*, 2:15-cv-00037 –DBH, (D.C. Maine, Jan. 26, 2 015). In that case, Riley alleged that Local 458 committed various violations of the Bill of Rights' Equal Rights provisions of Title I of the LMRDA, 29 U.S.C. § 411, including that Local 458 engaged in disparate treatment in allowing a retired member similarly situated to Riley who was delinquent in the payment of union dues to retain the member's status as a Local 458 member in good standing and to hold a state union office position but that Local 458 revoked Riley's status as a Local 458 member in good standing for allegedly failing to pay union dues.

OLMS' review of the information and the records showed that Riley submitted a check to Local 458 dated January 9, 2014, in the amount of $350.00, in payment of the local dues. Local 458 did not return the check to Riley but never cashed it. Riley's attorney submitted a personal check from Riley's checking account to Local 458, dated June 26, 2014, in the amount of $542.56 for Riley's local dues. Local 458 did not cash the check and returned it to Riley. In June of 2015, the APWU National Union determined that retirees were required to pay full local dues in the amount of $23.33 per pay period to retain membership rights.[2] The USPS had approximately 27 pay periods, one every two weeks, from October 22, 2014 to October 22, 2015, the candidacy qualifying period for the 2015 supervised election.[3] Riley's payment of his local dues in the amount of $350.00 and $542.56 in 2014 would have been sufficient to cover such dues owed for that entire year through May 15, 2015.[4] Although Local 458 refused to accept Riley's dues, he continued to pay his per capita dues to the APWU National Union and was current in those payments at the time of the 2015 supervised election.[5] By letter dated August 27, 2015, the APWU National Union provided Riley with a per capita invoice showing the per

---

[2] In a June 10, 2015 letter from the APWU National Union to retiree Wayne Poland, the union stated that retirees were required to pay full local dues in the amount of $23.33 per pay period to retain membership rights. Notwithstanding that requirement, the letter further states, "as reiterated in earlier discussion, the language of the local constitution should clearly state that retired members who wish to retain full membership rights are not required to pay any dues or reduced dues to the local." Thus, the specific local dues requirement for retirees is unclear.

[3] See http://www.postalemployeenetwork.com/USPS-payperiods-holidays.htm

[4] Local 458 dues for the year 2014 were approximately $630.00 ($23.33 X 27 pay periods = $629.91). Riley tendered nearly $895.00 in total local dues payments in January and June of 2014. Such payments were sufficient to cover his local dues for the pay periods covering 2014 through May 15, 2015.

[5] John Riley began working for the United States Postal Service (USPS) in 1972 and retired from the USPS in January of 2013. Local 458 permits retirees who have maintained their good standing status in the local by remaining current in their dues payments to run for and hold union office.

capita dues payments for the months of October, November and December of 2015. On September 28, 2015, Riley submitted a check to the APWU National Union in the amount of $63.06 to cover his per capita dues through December 31, 2015. The August 27 letter also stated that Local 458 would contact Riley to inform him of the amount of local dues he was required to pay. The investigation showed that Local 458 never contacted Riley regarding whether he owed local dues.

Based on Local 458's refusal to accept local dues from Riley, OLMS concluded that any further attempts by Riley to pay such dues would have been futile. It is a frequently invoked equitable principle under the LMRDA that a court will not require the performance of a futile action. *See, e.g., Bright v. Taylor*, 554 F.2d 854, 860 (8th Cir. 1977) (Title I of the LMRDA did not require plaintiffs to exhaustion internal union remedies where exhaustion would have been futile because of the union's refusal to address and remedy alleged violation); *Marshall v. Laborers, Blasters, Local 29*, 1980 WL 18737, at *3 (S.D.N.Y. Jan. 31, 1980) (court refused to require union members to pursue internal union steps that clearly would have been futile.). On these facts, the Department concluded that Riley was eligible to run for office during the 2015 supervised election and his name appeared on the ballot. Complainant Donnie Clark defeated Riley in the election for General Vice President by 148 votes to 78 votes. There was no violation of the LMRDA.

The Department has concluded from its investigation that Local 458's November 30, 2015 election for General President and General Vice President, conducted under the Department's supervision, was in compliance with Title IV of the Act and was conducted, insofar as lawful and practicable, in accordance with the constitution and bylaws of the Local

458 and the APWU national Union. Therefore, no reason exists to overturn the results of this election.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 16th day of December, 2015, in the City of Washington, District of Columbia.

*Sharon Hanley*
Sharon Hanley, Chief
Division of Enforcement,
Office of Labor-Management Standards,
United States Department of Labor